UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DARTEL McRAE, on behalf of himself and others similarly situated,

                Plaintiff,

   v.

MIXX LIFESTYLE INC. d/b/a NEBULA NY, YANG GAO, HUI FANG, and ERICA MAURER,

                Defendants.

24-cv-09851 (PAE)(HJR)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

D. Maimon Kirschenbaum
Josef Nussbaum
Michael DiGiulio
JOSEPH & KIRSCHENBAUM LLP
45 Broadway, Suite 320
New York, NY 10006
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Plaintiff and proposed Class*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   BACKGROUND ..................................................................................................... 3

   A.  Procedural History and Background ................................................................ 3

   B.  Defendants Were Not Entitled To Pay Putative Class Members Pursuant To A Tip Credit 3

   C.  Nebula Retained Automatic Fees They Charged Customers ................................ 5

   D.  Defendants Failed To Give Tipped Employees The Wage Notices and Statements Required Under The WTPA ................................................................................. 8

III.  ARGUMENT ........................................................................................................ 10

   A.  Plaintiff Satisfies The Requirements For Class Certification Under Fed. R. Civ. P. 23 ... 10

   B.  Plaintiff Satisfies the Requirements of Rule 23(a) ......................................... 11

      i.    Numerosity – Rule 23(a)(1) ................................................................... 11

      ii.   Commonality – Rule 23(a)(2) ................................................................. 11

      iii.  Typicality – Rule 23(a)(3) ....................................................................... 13

      iv.  Adequacy – Rule 23(a)(4) ....................................................................... 14

      v.    Rule 23(a)'s implied ascertainability requirement ..................................... 15

   C.  Class Certification Under Rule 23(b)(3) Is Appropriate ................................. 15

      i.    Common questions of law and fact predominate ...................................... 16

      ii.   A class action is superior to other methods of adjudication ....................... 16

   D.  Plaintiff's Counsel Should be Appointed as Class Counsel ............................. 18

   E.  The Proposed Notice Satisfies The Requirements Of Rule 23(C)(2)(B) .......................... 19

IV.  CONCLUSION .................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Andrade-Barteldes v. Valencia*, No. 23 CV 495, 2023 U.S. Dist. LEXIS 215247
    (S.D.N.Y. Dec. 4, 2023) ................................................................................................... 11, 18

*Argudo v. Parea Grp. LLC*, 2019 U.S. Dist. LEXIS 163249 (S.D.N.Y. Sep. 24, 2019 ........... 2, 18

*Barrows v. Becerra*, 24 F.4th 116 (2d Cir. 2022) ......................................................................... 13

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)......................................................................... 15, 16

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ....................................... 14

*Chichinadze v. BG Bar, Inc.,* 517 F. Supp. 3d 240 (S.D.N.Y. 2021)............................................. 5

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ............................ 6

*Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125 (S.D.N.Y. 2003) ............................................ 15

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012) ...................................................... 10, 16

*Fonseca v. Dircksen & Talleyrand Inc.*,
    2015 U.S. Dist. LEXIS 136427 (S.D.N.Y. 2015) ................................................................ 2, 13

*Freeland v. AT&T Corp.*, 238 F.R.D. 130 (S.D.N.Y. 2006) ......................................................... 11

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
    281 F.R.D. 100 (E.D.N.Y. 2011)............................................................................................... 14

*Gonzalez v. Hanover Ventures Marketplace LLC*,
    No. 21-cv-1347 (ER), 2024 U.S. Dist. LEXIS 48475 (S.D.N.Y. Mar. 18, 2024)............. 13, 14

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011 ............................... 15

*Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447 (S.D.N.Y. 2014) ............................... 2, 5, 12

*Hernandez v. JRPAC Inc.*,
    No. 14 Civ. 4176 (PAE), 2016 U.S. Dist. LEXIS 75430 (S.D.N.Y. June 9, 2016).................... 5

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)............................... 12

*In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5 (S.D.N.Y. 2020)............................ 11

*In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013)…………………………15

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)…………….………16

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014)..................................................... 11

*Jocko v. TJM Syracuse, LLC*,
    2023 NY Slip Op 50562(U), 79 Misc. 3d 1209(A), 189 N.Y.S.3d 920 (Sup. Ct.) .................... 8

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015)................................................... 10

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) .................................................... 14

*Lopez v. MNAF Pizzeria, Inc.*,
No. 18 CV 6033, 2021 U.S. Dist. LEXIS 57260 (S.D.N.Y. Mar. 25, 2021) ............................ 5

*Maldonado v. BTB Events & Celebrations, Inc.*,
990 F. Supp. 2d 382 (S.D.N.Y. 2013) ................................................................ 6, 8

*Masoud v. 1285 Bakery, Inc.*,
2017 U.S. Dist. LEXIS 14927 (S.D.N.Y. Jan. 25, 2017)........................................ 2, 13, 14, 16

*Megason v. Starjem Rest. Corp.*,
No. 12 Civ. 1299, 2014 U.S. Dist. LEXIS 3910 (S.D.N.Y. Jan. 10, 2014)................ 13, 16, 18

*Murphy v. Lajaunie*,
No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015)........................... 18

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) ............................................................... 10, 17

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)................................................................ 11, 13

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442 (S.D.N.Y. 2015)........................................... 5

*Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540 (S.D.N.Y. 2017) ................................ 4

*Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70 (2008)................................................................... 6, 8

*Sanchez v. E.I.G. Auto Salvage, Inc.*,
2023 U.S. Dist. LEXIS 159543 (S.D.N.Y. Sep. 8, 2023) .......................................... 10, 13

*Sanchez v. N.Y. Kimchi Catering, Corp.*, 320 F.R.D. 366 (S.D.N.Y. 2017)..........................13

*Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 124 (S.D.N.Y.2014)……………...13, 15, 16, 17

*Settecasi, v. Ark Rests. Corp. et al*,
No. 154038/2018, 2019 N.Y. Misc. LEXIS 13137 (Sup. Ct. June 27, 2019)........................... 7

*Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011) .................. 2, 13, 14, 18

*Shepard v. Rhea*, No. 12 CV 7220,
2014 U.S. Dist. LEXIS 158189 (S.D.N.Y. Nov. 7, 2014)....................................................... 12

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010).................................................. *passim*

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
546 F.3d 196 (2d Cir. 2008) ................................................................................................... 10

*Tecocoatzi-Ortiz v. Just Salad LLC*,
No. 18 CV 7342, 2022 U.S. Dist. LEXIS 34090 (S.D.N.Y. Feb. 25, 2022).............................. 5

*Torres v. Gristede's Operating Corp.*,
No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006).......................... 17

*Trinidad v. Breakaway Courier Sys.*,
No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007)............................. 17

*Vargas v. Howard*, 324 F.R.D. 319 (S.D.N.Y. 2018)................................................................ 10, 13

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ...................................... 11

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011) .............................. 13

*Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 66 (S.D.N.Y. 2018) .................................... *passim*

**Statutes**

Fed. R. Civ. P. 23……………………………………………………………………*passim*

N.Y. Lab. L. § 195……………..……………………………………………………*passim*

N.Y. Lab. L. § 196-d…………………………………………………..……………6, 8

N.Y. Lab. Law § 198(1-d)…………………………………………………………..9

N.Y. Comp. Codes & Regs. tit. 12, § 146-1.3......................................................... 3, 4

N.Y. Comp. Codes & Regs. tit. 12, § 146-2.2......................................................... 3, 4

N.Y. Comp. Codes & Regs. tit. 12, § 146-2.18....................................................... 6

N.Y. Comp. Codes & Regs. tit. 12, § 146-2.19....................................................... 6, 7, 8

Plaintiff Dartell McRae ("Plaintiff") submits this memorandum of law in support of his motion for certification of his New York State wage and hour claims pursuant to Fed. R. Civ. P. 23.[1]

## I.  PRELIMINARY STATEMENT

In December 2024, Plaintiff filed this action alleging that Defendants, the owners and operators of Nebula nightclub, violated New York law by (1) paying food-service employees pursuant to a tip credit without providing the requisite notice; (2) illegally retaining food-service employees' tips by failing to distribute "operations fees" that Nebula assessed to private event customers and which are purportedly gratuities; and (3) failing to provide the wage notices and wage statements required under N.Y. Lab. L. § 195. By this motion, Plaintiff seeks to certify a class consisting of all food-service employed at Nebula on or after six years prior to the filing of this lawsuit (the "Class Period").

This case is perfectly suited for class certification.  Defendants' witnesses testified that all food-service employees, including Plaintiff, were subject to the same compensation practices, including that (1) the employees were all paid pursuant to a tip credit but were not provided with the requisite written notification, (2) none of the employees received any of the operations fee despite Nebula's failure to properly notify customers that the fee was not a gratuity, and (3) none of the employees received wage notices and wage statements as required under N.Y. Lab. L. § 195. In short, under the clear and established law in this Circuit and District, cases, such as this one, where restaurant or night club employees allege company-wide wage and payroll practice violations, including paying employees pursuant to a tip credit without providing written notice and retaining charges purported to be gratuities, have been found to be perfectly suited for class

---

[1] With this memorandum of law, Plaintiffs submit the October 12, 2025 declaration of Josef Nussbaum ("Nussbaum Decl.") and exhibits thereto ("Ex. [number]") and the October 10, 2025 declaration of Dartell McRae.

treatment. *See, e.g., Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234, 240 (2d Cir. 2011); *Argudo v. Parea Grp. LLC*, 2019 U.S. Dist. LEXIS 163249 (S.D.N.Y. Sep. 24, 2019) (certifying class of employees who alleged they were paid pursuant to a tip credit without requisite notice); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 66, 69-70 (S.D.N.Y. 2018) (same); *Fonseca v. Dircksen & Talleyrand Inc.*, 2015 U.S. Dist. LEXIS 136427 (S.D.N.Y. 2015) (same); *Masoud v. 1285 Bakery, Inc.*, 2017 U.S. Dist. LEXIS 14927 (S.D.N.Y. Jan. 25, 2017) (certifying class of employees who alleged their employer improperly retained service charge) *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) (same); *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447 (S.D.N.Y. 2014) (denying decertification motion where plaintiffs alleged company-wide wage payment violations) (Engelmayer J.).

As set forth below, and for many of the same reasons set forth in the cases cited above and the many other cases in this Circuit certifying Rule 23 Classes for the wage and hour violations being litigated here, this case is also perfectly suited for class certification.

By the instant motion, Plaintiff respectfully requests that the Court:

(1) Certify this action as a Rule 23 class action pursuant to Fed. R. Civ. P. 23, on behalf of all persons employed as food-service workers at Nebula between December 20, 2018 and the date of a certification Order (the "Class Members");

(2) Appoint Plaintiff as Class Representative;

(3) Appoint Plaintiff's counsel as Class Counsel;

(4) Order Defendants to produce to Plaintiff a Microsoft Excel list, in electronic format, of all Class Members' names, last known address, all known telephone numbers, job title, and dates of employment; and

(5) Authorize the mailing of the proposed Notice to all Class Members.

## II.  BACKGROUND

### A.  Procedural History and Background

Defendant Mixx Lifestyle, Inc. d/b/a Nebula NY owns and operates Nebula, a nightclub in Midtown Manhattan ("Nebula"). (Ex. 2, 17:11-18; Ex 1 ¶ 3.)  Nebula operates as nightclub that is open to the public for "nightlife events" on Tuesdays, Fridays and Saturdays. (Ex. 2, 57:8-17.)  The club also operates as a venue for private events which they refer to as "special events." (Ex. 2, 66:23-67:4; Ex. 3, 29:22-30:16.)  Defendants Yang Gao and Hui Fang are part owners of Nebula. (Ex. 2, 19:10-17.)  Defendant Erica Maurer is the Director of Special Events at Nebula. (Ex. 2, 60:24-61:4; Ex. 3, 25:22-27:10, 29:22-30:16; Ex. 4.)  Plaintiff worked as a bartender at Nebula and commenced this action on December 20, 2024. ECF No. 1. As is relevant to this motion, the operative complaint alleges, *inter alia*, that Defendants violated the New York Labor Law ("NYLL") by (1) paying food-service employees pursuant to a tip credit without providing the notice required under New York law; (2) failing to distribute to food-service employees "operations fees" private event customers paid to Nebula, and (3) failing to provide the wage notices and wage statements required under N.Y. Lab. L. § 195. (*See generally* Ex. 1.)

### B.  Defendants Were Not Entitled To Pay Putative Class Members Pursuant To A Tip Credit

The NYLL requires employers to pay non-exempt employees at least the minimum wage. N.Y. Lab. Law § 652.  Throughout the Class Period (*i.e.*, December 20, 2018 to the present), the applicable minimum wage has ranged from $13 per hour to $16.50 per hour.  N.Y. Lab. L. § 652(1)(a)(i), (1-a)(i).  If certain conditions are satisfied, New York law permits employers to use a portion of tipped food service workers' tips as a credit (the "tip credit") against the minimum wage. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.3, 146-2.2.  Here, Nebula admits that it paid all putative Class Members pursuant to a tip credit when they worked during the club's public opening

hours. (Ex. 2, 71:8-72:2, 74:7-12, 126:8-127:9; Ex. 1 ¶¶ 24, 28.) Specifically, from the time the club opened in 2021 until the time that Plaintiff filed his Complaint, Defendants paid the food-service employees $12.50 per hour when they worked during the club's public opening hours. (Ex. 2, 74:7-12, 116:24-117:20; 126:8-127:9; Exs. 5-8.) However, Defendants' use of the tip credit was unlawful, as it did not provide putative Class Members with the tip credit notice required under New York law. (Ex. 2, 81:22-83:19, 84:13-85:13; Nussbaum Decl. ¶ 10; Ex. 9.)

Under the New York State Department of Labor's regulatory scheme, "[a]n employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2" of the Hospitality Industry Wage Order.  N.Y. Comp. Codes R. & Regs, tit. 12, § 146-1.3. Section 146-2.2 of the Hospitality Industry Wage Order is titled "Written notice of pay rate, tip credit and pay day."  N.Y. Comp. Codes R. & Regs, tit. 12, § 146-2.2.  It states that

> an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday.  The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

*Id.* § 146-2.2(a).  Such written notice is required "prior to the start of employment" and "prior to any change in the employee's hourly rates of pay."  *Id.* § 146-2.2(a), (b).  The employer bears the burden of proving compliance with this notice requirement.  *Id.* § 146-2.2(d).  "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid."  *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017) (citations omitted). The law requires the employer to "obtain from the employee a signed and dated written acknowledgment… of receipt of this notice, which the employer *shall preserve and maintain for six years*." N.Y. Comp. Code R. & Regs. tit. 12, § 146-

2.2(c) (emphasis added); *see Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342, 2022 U.S. Dist. LEXIS 34090, at \*24 (S.D.N.Y. Feb. 25, 2022); *Chichinadze v. BG Bar, Inc.,* 517 F. Supp. 3d 240, 256 (S.D.N.Y. 2021) ("Under the NYLL, Defendants were required to: (i) provide Plaintiff written notice of the tip credit prior to the start of her employment, (ii) obtain Plaintiff's acknowledgement of receipt of that notice, and (iii) keep Plaintiff's acknowledgement on file for six years.")

If an employer fails to provide the written notice as described in § 146-2.2, it may not pay tipped employees pursuant to a tip credit. *E.g.*, *Hart*, 60 F. Supp. 3d at 454-55 (defendant could not utilize tip credit under NYLL due to failure to provide written wage notice) (Engelmayer J.); *Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176 (PAE), 2016 U.S. Dist. LEXIS 75430, at \*81 (S.D.N.Y. June 9, 2016) ("Notice of the tip credit under the NYLL . . . must be written.") (Engelmayer J.); *Tecocoatzi-Ortiz*, 2022 U.S. Dist. LEXIS 34090, at \*23-27; *Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033, 2021 U.S. Dist. LEXIS 57260, at \*21-24 (S.D.N.Y. Mar. 25, 2021); *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 466 (S.D.N.Y. 2015).

Nebula admits it never provided putative Class Members with written notice as to how the employees were being paid and that the club was taking a tip credit. (Ex. 2, 71:8-72:2, 74:7-12, 116:24-117:20; 126:8-127:9; Exs. 5-8; Nussbaum Decl. ¶ 10; Ex. 9.)  Accordingly, the club's use of the tip credit was unlawful. *See, e.g., Hart*, 60 F. Supp. 3d at 454-55; *Hernandez,* 2016 U.S. Dist. LEXIS 75430, at \*81.

### C. Nebula Retained Automatic Fees They Charged Customers

Throughout the Class Period, Defendants charged their private event customers a fixed "operations fee" in addition to food and beverage charges.  This charge was typically 22% of the event's food and beverage charges and Defendants retained the charge in full. (Ex. 2, 108:13-25, 127:10-22; Ex. 1 ¶¶ 30-35.) This was unlawful because the operations fee purported to be a gratuity, and therefore should have been distributed to putative Class Members.

5

New York law prohibits employers from retaining "any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y Lab. Law § 196-d. The standard for whether a private event charge is "purported to be a gratuity," thus placing it within the purview of § 196-d, is measured by whether a reasonable patron would understand that the charge was being collected in lieu of a gratuity. *See Spicer*, 269 F.R.D. at 330 (citing *Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70, 79 (2008) ("[T]he statutory language of Labor Law § 196-d can include mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees.")). When a "banquet operator add[s] the service charge to the banquet contract and sa[ys] nothing about its purpose . . . a 'reasonable patron' would believe an 18% to 20% service charge is for the service staff." *Spicer*, 269 F.R.D. at 330. In such situations, the "percentage of the contract price [representing the charge] must be paid in its entirety to the waiters, busboys and 'similar employees' who work at that function, even if the contract makes no reference to such a gratuity." *World Yacht*, 10 NY. 3d at 79.

Under the regulations promulgated by the New York State Department of Labor ("NYSDOL"), (1) a charge purported to be a gratuity must be distributed in full to the employees who provided the service; (2) there is a rebuttable presumption that a charge in addition to charges for food and beverages is a charge purported to be a gratuity; and (3) employers must maintain certain records related to such charges. N.Y. Comp. Codes & Regs. tit. 12, § 146-2.18. In addition, despite the language used to describe a particular charge, "'[t]he employer has the burden of demonstrating, by clear and convincing evidence, that the notification [to customers] was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity.'" *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 286 (S.D.N.Y. 2011) (quoting §146-2.19(b)); *see also Maldonado v. BTB Events & Celebrations, Inc.*, 990 F. Supp. 2d

382, 394 (S.D.N.Y. 2013) (emphasizing the "clear and convincing evidence" standard) (Engelmayer J.).

Significantly, the New York regulations are clear about what notification is sufficient:

Adequate notification shall include a statement in the contract or agreement with the customer, **and on any menu and bill listing prices**, that the administrative charge […] is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service to the guests.

NYCRR § 146-2.19(c) (emphasis added).

Here, in discovery, Defendants produced sample records for 16 private events and testified that these sample documents are reflective of their practices at all private events at Nebula. (Nussbaum Decl. ¶¶ 13-14; Ex. 3, 85:3-12.) Both the documentary record and Defendants' own witness's testimony confirms that Nebula private event customers received three types of documents referencing the additional charge, namely: (1) menus, all of which referenced the charge and did *not* contain a statement that the charge was not a gratuity, which were provided to all customers, (2) contracts that *did* contain a statement that the charge was not a gratuity (also provided to all customers), and (3) invoices, which again did *not* contain a statement that the charge was not a gratuity and which were provided to the majority of customers. (Nussbaum Decl. ¶¶ 13-14.)[2]

In short, Defendants' failure to include the notification that the operations charge was not a gratuity on the menus and invoices directly violates the requirements of § 146-2.19(c) ("Adequate notification shall include a statement in the contract or agreement with the customer, and on any menu and bill listing prices,"). *See also Settecasi, v. Ark Rests. Corp. et al*, No. 154038/2018, 2019 N.Y. Misc.

---

[2] Based on Plaintiff's analysis of Defendants' sample records, Nebula provided the invoices—which never included a disclaimer—to approximately 68.75% of customers. (Nussbaum Decl. ¶¶ 13-14.)

LEXIS 13137, at *2 (Sup. Ct. June 27, 2019) (emphasizing that § 146-2.19(c) "explicitly refers in the conjunctive" and that "invoices constitute 'bill[s] listing prices' to which 12 NYCRR §146-2.19 explicitly refers").  Moreover, the only document Defendants presented to customers that actually had a disclaimer is the contract.  Accordingly, Defendants will be unable to meet the "clear and convincing" evidence standard and will be unable to rebut the presumption that the charges in question are gratuities. *See, e.g., Jocko v. TJM Syracuse, LLC*, 2023 NY Slip Op 50562(U), ¶ 4, 79 Misc. 3d 1209(A), 189 N.Y.S.3d 920 (Sup. Ct.) (granting plaintiff summary judgment where the required disclosures were not made on every document submitted to clients); *Maldonado*, 990 F. Supp. 2d at 394 (granting summary judgment to plaintiffs where Defendants could not meet this "elevated standard.") (Engelmayer J.).  Accordingly, under § 196-d and the NYDOL regulations, Nebula was obligated, but failed, to distribute the entirety of the operations fee to the food-service employees that worked the private events.  *See World Yacht*, 10 NY. 3d at 79.

### D. Defendants Failed To Give Tipped Employees The Wage Notices and Statements Required Under The WTPA

Under N.Y. Lab. Law § 195(1) and (3), employers are required to furnish their employees with wage notices and wage statements containing information specified by statute.  Defendants were required to give putative Class Members "at the time of hiring" a notice stating:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; [and] the telephone number of the employer[.]

N.Y. Lab. L. § 195(1)(a).

8

As detailed above, *supra at pgs. 3-5*, Defendants admit that they did not provide putative Class Members with *any* written wage notices. As a result, Class Members are entitled to recover the statutory damages authorized under N.Y. Lab. Law § 198(1-b). *See, e.g., Sanchez v. E.I.G. Auto Salvage, Inc.*, 2023 U.S. Dist. LEXIS 159543, at **59-60 (S.D.N.Y. Sep. 8, 2023) ("As defendants concede, they did not provide Sanchez with the statutorily required wage notice. […] They thus violated the NYLL's wage notice provision.") (Engelmayer J.)

Defendants were also required to provide Class Members with written statements accompanying every payment of wages listing:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. Lab. L. § 195(3). The paystubs Defendants provided to putative Class Members failed to state (1) the correct overtime rates,[3] and (2) the amount of the tip credit taken, in violation of N.Y. Lab. L. § 195(3). (Ex. 10.)[4]

Because Defendants did not comply with N.Y. Lab. L. § 195(3), putative Class Members are entitled to recover the statutory damages authorized under N.Y. Lab. Law § 198(1-d). *E.g.,*

---

[3] The New York State overtime rates during the relevant periods ranged from $22.50 to $24.75 (N.Y. Lab. Law § 652, NYCRR § 146-1.4), however plaintiff and the putative class members were paid $18.75 for overtime hours worked. *See* Ex. 10. Even if Defendants were lawfully applying a $2.50 tip credit (but they were not as discussed above), the tipped employees should have been paid between $20 and $22.25 an hour for overtime hours they worked.

[4] To be sure, Defendants concede that all the food-service employees received wage statements that followed the same exact format with the only differences being that different employees' paystubs had (1) different contact information for each employee, and (2) different dollar amounts for each employees' earnings/tax deductions. (*See* Ex. 2, 118:2-120:2.) However, all employees received the same pay rates and they all received paystubs that failed to list allowances Defendants were taking from the minimum wage. *Id.*

*Sanchez*, 2023 U.S. Dist. LEXIS 159543, at *60 (holding that defendant "violated the NYLL's wage statement provision" when they conceded that "they did not furnish the statutorily required wage statements") (Engelmayer J.).

## III.  ARGUMENT

### A.  Plaintiff Satisfies The Requirements For Class Certification Under Fed. R. Civ. P. 23

Rule 23 provides that certification is appropriate where, as here, plaintiff satisfies the four requirements of Rule 23(a) and one of the three prerequisites of Rule 23(b). *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008).  While the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Vargas v. Howard*, 324 F.R.D. 319, 324 (S.D.N.Y. 2018) (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)).  "In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common.*'" *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (*quoting Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010)) (emphasis in original).

The party seeking class certification bears the burden of satisfying the requirements of Rule 23 by a preponderance of the evidence. *Teamsters Local 445*, 546 F.3d at 202.  Nevertheless, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction." *Vargas*, 324 F.R.D. at 324 (citations omitted).  Consequently, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Id.* (citations omitted).

**B.  Plaintiff Satisfies the Requirements of Rule 23(a)**

In order to meet their burden under Rule 23(a), Plaintiff must show that:

(1) The class is so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

### i.  Numerosity – Rule 23(a)(1)

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Pr. 23(a)(1).  Numerosity is presumed satisfied if the class has at least 40 members.  *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *In re Aluminum Warehousing Antitrust Litig*., 336 F.R.D. 5, 37 (S.D.N.Y. 2020) (Engelmayer J.). Here, at deposition, Defendants admitted that there are at least 100 potential Class Members.  (Ex. 2, 113:8-114:22.)  Thus, numerosity is easily satisfied.

### ii.  Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires that a common question of fact or law is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).  Put another way, commonality requires a "common contention" that will "resolve an issue central to the validity of each one of the claims in one stroke."  *Jackson*, 298 F.R.D. at 162. (internal citations omitted).  "Even a single common legal or factual question will suffice."  *Id*. (quoting *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006)).

"'In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices.'" *Andrade-Barteldes v. Valencia*, No. 23 CV 495, 2023 U.S. Dist. LEXIS 215247, at *9 (S.D.N.Y. Dec. 4, 2023). "[F]actual differences among the claims of the class members do not preclude a finding of commonality." *Shepard v. Rhea*, No. 12 CV 7220, 2014 U.S. Dist. LEXIS 158189, at *13 (S.D.N.Y. Nov. 7, 2014); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("Once a common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality.").

As described above, all members of the Rule 23 Class were employed by Nebula as food-service workers. In the course of their employment with Defendants, Plaintiff and putative Class Members were all subject to Defendants' common policies of paying the food-service employees pursuant to a tip credit without providing the necessary notice, retaining charges purported to be gratuities, and failing to provide the required wage notices and wage statements.

Thus, the following questions of fact or law are common to the potential Class Members:

(1) Whether Defendants' use of the tip credit was unlawful;

(2) Whether Defendants' retention of the operations fees was unlawful;

(3) Whether Defendants provided potential Class Members with wage notices that complied with N.Y. Lab. L. § 195(1); and

(4) Whether Defendants provided potential Class Members with wage statements that complied with N.Y. Lab. L. § 195(3).

These questions generate common answers that would drive the resolution of the litigation because, in a single stroke, they can establish that Defendants caused the same injury to Class Members by unlawfully (1) paying Class Members pursuant to a tip credit without providing the required notice; (2) retaining fees that purported to be gratuities; (3) failing to provide the wage

notices required under N.Y. Lab. L. § 195(1); and (4) failing to provide the wage statements required under N.Y. Lab. L. § 195(3).

Courts have routinely found commonality satisfied where food-service establishments committed these same violations against a group of employees. *E.g., Hart*, 60 F. Supp. 3d at 470-471 (S.D.N.Y. 2014) (finding commonality satisfied in wage and hour case where, as here, employer "systematically implemented a series of across-the-board policies") (Engelmayer J.); *see also, e.g., Shahriar*, 659 F.3d at 252 (finding commonality satisfied where "all Class Members were subject to the same tipping policies"); *Spicer*, 269 F.R.D. at 336–37 (commonality met because plaintiffs' claims arose from defendants' "system for collecting, explaining, representing, and distributing the service charge"); *Masoud*, 2017 U.S. Dist. LEXIS 14927, at *15; *Vargas*, 324 F.R.D. at 325; *Zivkovic*, 329 F.R.D. at 61 (commonality met where all employees claimed they were paid a tip credit despite employers' failure to provide written notice); *Fonseca*, 2015 U.S. Dist. LEXIS 136427 (same); *Sanchez v. N.Y. Kimchi Catering, Corp*., 320 F.R.D. 366, 376 (S.D.N.Y. 2017) (same); *Megason v. Starjem Rest. Corp.,* No. 12 Civ. 1299, 2014 U.S. Dist. LEXIS 3910 *21-23 (S.D.N.Y. Jan. 10, 2014) (same); *Schear v. Food Scope Am., Inc*., 297 F.R.D. 114, 124 (S.D.N.Y. 2014).

### iii. Typicality – Rule 23(a)(3)

Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022). "A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' 'injuries derive from a unitary course of conduct by a single system." *Spicer*, 269 F.R.D. at 337 (quotations omitted). However, "minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux*,

987 F.2d at 936-37; *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011). Typicality "'does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-cv-1347 (ER), 2024 U.S. Dist. LEXIS 48475, at *13 (S.D.N.Y. Mar. 18, 2024); *see also*, *e.g.*, *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 106 (E.D.N.Y. 2011) (stating that "[e]ven if some class members' facts are somewhat different than [the named plaintiffs] the claims are similar enough to meet the typicality element," because all class members "were subject to the same general employment scheme" and "their claims are all based on the same course of events and legal theory") (citations omitted).

The commonality and typicality "'requirements tend to merge into one another.'" *Gonzalez*, 2024 U.S. Dist. LEXIS 48475, at *12. Because, as discussed with respect to commonality, all Class Members were subject to the same wage and hour policies, typicality is easily satisfied. *E.g.*, *id.* at *16-17; *Shahriar*, 659 F.3d at 252; *Zivkovic*, 329 F.R.D. at 71; *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 204 (S.D.N.Y. 2006); *Spicer*, 269 F.R.D. at 336 (S.D.N.Y. 2010); *Masoud*, 2017 U.S. Dist. LEXIS 14927, at *15.

### iv. Adequacy – Rule 23(a)(4)

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253. Here, Plaintiff is prepared to act as class representative, has no conflict with any Class Members, and will fairly and adequately protect the interests of the Class. (McRae Decl. ¶¶ 6-8.) Additionally, since Plaintiff was subject to the same common policies and practices as all other members of the Class, the same

legal arguments and strategies are applicable to vindicate their claims. *See Spicer*, 269 F.R.D. at 337 ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.") (citation omitted).

### v. Rule 23(a)'s implied ascertainability requirement

Although it is "not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition." *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 393 (N.D.N.Y. 2011). Specifically, courts have required that "a class be identifiable before it may be properly certified." *Id.* at 396 (*citing Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Schear*, 297 F.R.D. at 125 (quotation omitted). Here, the proposed Class Members are easily identifiable from Defendants' records: it is comprised of all food-service employees – *i.e.*, bussers, servers and bartenders – who worked at Nebula during the Class Period.

### C. Class Certification Under Rule 23(b)(3) Is Appropriate

"In addition to satisfying the Rule 23(a) prerequisites, a class proponent must qualify the proposed class under one of the three subsection 23(b) categories." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). "Rule 23(b)(3), the provision that Plaintiffs move under here, is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication." *Schear*, 297 F.R.D. at 125 (quoting Fed. R. Civ. P. 23(b)(3)).

### i.    Common questions of law and fact predominate

Predominance is satisfied under Rule 23(b)(3) "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks omitted).

Courts routinely find that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices. *See*, *e.g.*, *Flores*, 284 F.R.D. at 130 (questions of whether class members were paid the correct hourly wages or had their gratuities improperly withheld "are about the most perfect questions for class treatment.") (internal quotation marks omitted); *Zivkovic*, 329 F.R.D. at 75 ("Where plaintiffs' claims arise from a common policy and rely on a common legal theory, the predominance requirement is satisfied because the need for individualized determinations of the putative class members' damages does not, without more, preclude class certifications.") (internal quotation marks omitted); *Megason*, 2014 U.S. Dist. LEXIS 3910, at *21, 25; *Schear*, 297 F.R.D. at 125-26; *Spicer*, 269 F.R.D. at 338; *Masoud*, 2017 U.S. Dist. LEXIS 14927, at *17-18.  Here, the common questions identified *supra* will determine Defendants' liability with respect to the entire class.  Accordingly, common questions predominate.

### ii.    A class action is superior to other methods of adjudication

Rule 23's superiority requirement is satisfied where "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Brown*, 609 F.3d at 483 (internal quotation marks and citation omitted).

Here, class certification will permit the resolution of dozens of individual claims in a single forum, at one time, thereby avoiding a multiplicity of repetitive lawsuits. When a plaintiff is "aggrieved by a single policy of the defendant," a class action is ideal as many nearly identical legal and factual issues can be adjudicated in unison. *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001).

Courts routinely find superiority satisfied where, as here, it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery. *See*, *e.g.*, *Zivkovic*, 329 F.R.D. at 76 (superiority satisfied where "[i]t is unlikely that the class members would engage in individual action because the amount of potential recovery is low and likely to be outweighed by the individual cost of litigation"); *Schear*, 297 F.R.D. at 125 ("Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants."); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *53 (S.D.N.Y. Sept. 29, 2006) (class action is superior to other methods where the amount of recovery was small in relation to litigation costs). Without certification, a host of individuals will lose any practical means for obtaining damages stemming from Defendants' illegal conduct.

In addition, opt-out classes are commonly granted where, as here, some Class Members currently work for the defendant and "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." *Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *26 (S.D.N.Y. Jan. 12, 2007) (internal quotation omitted); *see also*, *e.g.*, *Schear*, 297 F.R.D at 126; *Torres*, 2006 U.S. Dist. LEXIS 74039,

at \*53-54.  Since the proposed class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," a class action is the superior method of resolving the claims of the Class.  *Myers*, 624 F.3d at 547.

### D.  Plaintiff's Counsel Should be Appointed as Class Counsel

Prior to appointing class counsel Rule 23(g) directs the Court to consider:

(i)     the work counsel has done in identifying or investigating potential claims in the action;
(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii)   counsel's knowledge of the applicable law; and
(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).  *See also Andrade-Barteldes*, 2023 U.S. Dist. LEXIS 215247, at \*11-12.

Plaintiff retained an experienced employment law firm – Joseph and Kirschenbaum LLP ("JK").  Counsel has extensive experience, and JK has repeatedly managed large class-action litigations to successful resolution.  *See, e.g., Shahriar*, 659 F.3d 234 (affirming district court's certification of Rule 23 class of restaurant servers with JK as class counsel); *Argudo,* 2019 U.S. Dist. LEXIS 163249, at \*16 (appointing JK class counsel); *Zivkovic*, 329 F.R.D. at 74 ("[T]he attorneys of Joseph & Kirschenbaum have substantial experience as lead or co-lead class counsel in wage and hour actions in this District."); *Murphy v. Lajaunie,* No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531, at \*22-23 (S.D.N.Y. July 24, 2015) (appointing JK class counsel); *Megason*, 2014 U.S. Dist. LEXIS 3910 (same). (*See also* Nussbaum Decl. ¶¶ 15-22.) Further, Plaintiff's counsel have zealously prosecuted this action and identified the potential claims and have sufficient financial resources to represent the class.  (Nussbaum Decl. ¶ 23.)  The Rule 23(g) requirements are therefore satisfied by the appointment of Plaintiff's counsel as class counsel.

**E.  The Proposed Notice Satisfies The Requirements Of Rule 23(C)(2)(B)**

Attached as Exhibit 11 to the Nussbaum Declaration is Plaintiff's proposed class notice, which satisfies all the requirements of Rule 23(c)(2)(B).[5]

## IV.  CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court certify the NYLL claims in this case as a class action under Rule 23.

Dated: New York, NY

October 12, 2025

By:  _s/ Josef Nussbaum_
D. Maimon Kirschenbaum
Josef Nussbaum
Michael DiGiulio
**JOSEPH & KIRSCHENBAUM LLP**
45 Broadway, Suite 320
New York, NY 10006
(212) 688-5640 Phone
(212) 981-9587 Fax

_Attorneys for Plaintiff and the proposed Class_

---

[5] Rule 23(c)(2)(B) requires that notice to a Rule 23(b)(3) class state, "in plain, easily understood language:

    (i)       the nature of the action;
    (ii)      the definition of the class certified;
    (iii)    the class claims, issues, or defenses;
    (iv)    that a class member may enter an appearance through an attorney if the member so desires;
    (v)     that the court will exclude from the class any member who requests exclusion;
    (vi)    the time and manner for requesting exclusion; and
    (vii)   the binding effect of a class judgment on members under Rule 23(c)(3)."

CERTIFICATE OF COMPLIANCE

    This brief complies with the word count limitation of Local Civil Rule 7.1(c) because it contains 6037 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

Dated: October 12, 2025                  By:      _s/ *Josef Nussbaum*_
                                              Josef Nussbaum